**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **B.M. and M.M.**

**No. 22-0038** (Webster County 21-JA-18 and 21-JA-19)

**MEMORANDUM DECISION**

Petitioner Mother N.H., by counsel Bernard R. Mauser, appeals the Circuit Court of Webster County's December 28, 2021, order terminating her parental rights to B.M. and M.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Katica Ribel, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Mary Elizabeth Snead, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed a child abuse and neglect petition against petitioner and her boyfriend in June of 2021. Specifically, the DHHR alleged that petitioner's home was in deplorable condition with portions of the ceiling falling down, trash and old food scattered throughout the home, garbage and various items scattered outside of the home, cockroaches in the home, and a broken ladder leading to an upstairs floor. Further, petitioner allowed another adult to live in the home whose parental rights to her children had previously been terminated. Petitioner waived her preliminary hearing. Later, her boyfriend was dismissed from the proceedings after he advised the court that he was not a custodian of the children. The court ordered petitioner to have no further contact with her boyfriend.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

In July of 2021, the DHHR filed an amended petition adding allegations that petitioner tested positive for methamphetamine on a hair follicle test and that she tested positive for methamphetamine and amphetamine following the preliminary hearing. The DHHR claimed that petitioner was addicted to and abused controlled substances, which negatively affected her ability to care for the children.

The court held an adjudicatory hearing in August of 2021. Petitioner stipulated to the allegations contained in the petitions. Specifically, petitioner stipulated that the home was in deplorable condition, that the children were living with a person whose parental rights had previously been terminated, that petitioner tested positive for methamphetamine, and that petitioner was addicted to controlled substances which impaired her ability to parent the children. The court accepted petitioner's stipulation and adjudicated her as an abusing parent. Following the adjudicatory hearing, petitioner continued to abuse drugs and refused to enter long-term inpatient treatment, prohibiting her from visiting the children.

The court held an initial dispositional hearing in November of 2021. A CPS worker testified that she had repeatedly discussed the importance of seeking drug treatment with petitioner since the initiation of the case and that, while petitioner had entered a drug detoxification program, she left the facility within four days of her admittance. The CPS worker further testified that petitioner submitted to thirty-one drug screens, eighteen of which were positive for methamphetamine. The CPS worker stated that she visited petitioner's home the morning of the hearing and that petitioner claimed she did not have a drug problem. The worker further observed petitioner's boyfriend in the home, which was against court order. The CPS worker testified that petitioner also failed to comply with parenting classes and had not obtained suitable housing. As such, the CPS worker recommended that petitioner's parental rights be terminated.

Petitioner explained that she tested positive for methamphetamine because an individual in her home had placed methamphetamine in the ice maker, tainting her ice cubes. She denied being addicted to the substance or intentionally abusing the substance. Petitioner also stated that she left her drug detoxification program because it gave her anxiety and that she would prefer to attend outpatient, rather than inpatient, treatment. She admitted, however, that she had not taken any steps to attend outpatient drug treatment. Petitioner also admitted that she continued to live with her boyfriend against court order.

Following testimony, the court directed petitioner to submit to a drug screen, and she tested positive for methamphetamine. The court continued the hearing to give petitioner the chance to enter a long-term inpatient drug treatment program and further ordered her to have no contact with her boyfriend.

The court held a second dispositional hearing in December of 2021. A CPS worker testified that petitioner had not maintained contact with her since the prior hearing and that she twice attempted to locate petitioner at her home to no avail. Petitioner testified that she completed the paperwork for a drug rehabilitation program but had not sent it in. At the court's direction, petitioner submitted to a drug screen and tested positive for methamphetamine. The court

continued the hearing once more to provide petitioner an opportunity to seek long-term inpatient drug treatment.

The court held the final dispositional hearing later in December of 2021. Petitioner testified that she did not enroll in a long-term drug treatment program and continued to claim that she had not abused methamphetamine. Accordingly, given petitioner's failure to acknowledge her issues with drug abuse, her refusal to attend drug treatment, and her failure to establish a fit and suitable home for the children, the court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the children's welfare. Petitioner appeals the December 28, 2021, dispositional order terminating her parental rights to the children.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights. Petitioner contests the court's finding that there was no reasonable likelihood that she could correct the conditions of abuse and neglect in the near future and argues that the court should have afforded her an improvement period or granted her some less restrictive alternative to the termination of her parental rights. Petitioner states that the case had been pending for only six months at the time of disposition and that she has participated in "most" of her parenting and adult life skills classes. Further, petitioner averred that she attempted to enter an inpatient program but was unable to complete the same due to her anxiety. According to petitioner, she simply needed more time to comply with services, obtain extensive substance abuse counseling through an outpatient facility, and address the conditions of abuse and neglect.

We disagree. This Court has held that an individual "charged with abuse and/or neglect is not unconditionally entitled to an improvement period." *In re Emily*, 208 W. Va. 325, 336, 540

---

[2]The permanency plan for the children is reunification with their father pending his successful completion of his improvement period. The concurrent permanency plan is adoption or guardianship with the paternal grandparents.

S.E.2d 542, 553 (2000). West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a post-adjudicatory improvement period when the parent or custodian "demonstrates, by clear and convincing evidence, that [he or she] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . [guardian] to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). However, the circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

Further, we have previously held that

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted).

Here, petitioner failed to establish that she was entitled to an improvement period. During the proceedings below, petitioner tested positive for methamphetamine over twenty times yet claimed that she had never intentionally abused the substance. Rather, petitioner provided incredible explanations and claimed that she tested positive for methamphetamine due to residual contact through her ice machine. Further, petitioner prematurely left her detoxification program and failed to enter any other inpatient treatment programs, despite the court continuing the dispositional hearing on two separate occasions to afford her the ability to do the same. At the final dispositional hearing, petitioner had not entered into a program and continued to deny abusing methamphetamine. Clearly, petitioner failed to acknowledge the existence of the problem, rendering an improvement period an exercise in futility at the children's expense. While petitioner claims her anxiety prevented her from attending inpatient treatment, she fails to cite to the record demonstrating a legitimate diagnosis for an anxiety disorder, and the record reveals that petitioner took no steps to participate in outpatient treatment. Accordingly, given petitioner's failure to acknowledge her substance abuse and her failure to take any steps towards treating the same, we find no error in the circuit court's decision to deny her an improvement period.

We likewise find no error in the termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his or her] own or with help."

The record establishes that petitioner demonstrated an inadequate capacity to solve the problems of abuse or neglect on her own or with help. Petitioner failed to complete her detoxification program and failed to seek any form of drug treatment, whether outpatient or inpatient, by the time of the dispositional hearing, and she refused to acknowledge her drug abuse. Moreover, given petitioner's failure to consistently produce negative drug screens, she was prohibited from visiting with the children. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). Petitioner also missed several parenting and adult life skills classes and continued to live with her boyfriend against the court's orders. Based on the foregoing, the circuit court found that there was no reasonable likelihood that petitioner would correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. We agree and conclude that these findings are sufficient to support the termination of petitioner's parental rights.

To the extent petitioner argues that the circuit court should have granted a less restrictive alternative to the termination of her parental rights, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given the evidence as set forth above, we find that the circuit court did not err in terminating petitioner's parental rights.

Lastly, because the proceedings regarding the father remain ongoing, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the dispositional order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement

of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 28, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: May 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn